UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:07-cr-58-FtM-29DNF
)
RICHARD FRANKLIN, )
)
          Defendant )

## RECOMMENDED DECISION ON MOTION TO SUPPRESS

Richard Franklin, charged in two counts with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and in a third count with possession of a firearm and a weapon made from a shotgun without a serial number that were not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871, seeks the suppression of all of the evidence seized during a warrantless search of his residence on August 24, 2006.[1] *See* Indictment (Doc. 1); Motion to Suppress ("Motion") (Doc. 16). The government filed a response to the Motion on March 8, 2010. Response to Motion to Suppress ("Opposition") (Doc. 18). An evidentiary hearing was held before me on March 12, 2010 followed by oral argument. I recommend that the following findings of fact be adopted and that the Motion be granted.

### I. Proposed Findings of Fact

The defendant was released from a Florida prison, where he was serving a sentence for burglary and grand theft, on April 29, 2006, prior to his "maximum release date" of July 16, 2006,

---

[1] For a list of weapons seized, see Gov't. Exh. 4 at 5.

based on "gain time" he had earned. Gov't. Exh. 1 at 1; Tr.[2] at 13, 55. Because of his criminal history, the Florida Parole Commission, in the exercise of its authority, placed the defendant on conditional release. Tr. at 55. On April 19, 2006, prior to his prison release, he signed a document titled *Certificate of Conditional Release and Terms and Conditions of Supervision* ("Conditions of Supervision"). Gov't Exh. 1 at 1; Tr. at 20. While on conditional release, the defendant remained under the jurisdiction of the Florida Parole Commission pursuant to FLA. STAT. § 947. Gov't. Exh. 1 at 1. According to the Conditions of Supervision, the defendant's conditional release was to terminate on July 16, 2006 "unless otherwise released or until other action may be taken." *Id.* The terms of the defendant's Conditions of Supervision included the following:

> 8. You shall:
>
>    A. submit to a reasonable search by a conditional release supervisor, of your person, residence or automobile,
>
>    ***
>
>    C. permit your conditional release supervisor to visit you at your residence, employment or elsewhere.
>
>    ***
>
> 13. You shall submit to searches by your conditional release supervisor of your person, property and premises.

*Id.* at 2, 4.

Florida Department of Corrections Probation Specialist William Lally, acting essentially as a parole officer, was assigned to supervise the defendant upon his release from incarceration. Tr. at 9-11, 20. On the morning of June 23, 2006, after the defendant had ostensibly changed his residence without prior approval and absconded from supervision, he telephoned Officer Lally and

---

[2] "Tr." refers to the Transcript of Proceedings (Doc. 26).

told him, among other things, that he was "messed up," wished he had a pistol so that he could "stick it in his mouth and end it all," and Lally should stop looking for him because he would not find him. Gov't. Exh. 2 at 1; Tr. at 17-19, 23. Later that same day a Violation Report was issued charging the defendant with failing to obtain the permission of his conditional release supervisor prior to changing his residence, failing to submit to a urinalysis, and committing the criminal offense of possession and use of marijuana. Gov't. Exh. 2 at 1; Tr. at 17, 23. On the Violation Report, a box to the left of the word "Absconder" was marked with an "X". Gov't. Exh. 2 at 1. The report contained a recommendation that the Parole Commission issue a warrant for the defendant's arrest because the defendant was considered a possible danger to himself or others based upon his suicide threat. *Id.* at 2

The Parole Commission issued a warrant for the defendant's arrest (called a "retaking") on June 23, 2006. Gov't. Exh. 3. Thereafter, Officer Lally attempted on several occasions to locate the defendant, but without success. Tr. at 24. On August 24, 2006, at approximately 10:30 p.m., Officer Lally drove to a rented house at 12356 Third St. in Fort Myers Shores that he had driven by several times before, in which he knew the defendant's fiancée was residing and believed the defendant might be found.[3] Def't. Exh. E; Tr. at 25-26. On his first pass by the house he observed two cars in the driveway. Tr. at 26. On his second pass, after driving around the block, he saw that an additional vehicle had arrived and that lights were now on in the front room of the house. *Id.* Officer Lally next contacted the Lee County Sheriff's Department for assistance in the possible arrest of the defendant. *Id..* at 27. Soon thereafter, Deputy Sheriff Jamie Thorpe

---

[3] Although no direct evidence was presented that the Fort Myers Shores residence was also the defendant's residence at the time of the challenged search, the government has apparently assumed that it was, *see, e.g.* Tr. 4, and for good reason, *see* Gov't. Exh. 2 at 2, Gov't. Exh. 4 at 2-4; Def't. Exh. C. If the government's position were otherwise, it would undoubtedly have raised a standing issue, which it did not. Accordingly, I find it to be a fact that the residence in question was the defendant's residence.

arrived at the scene, accompanied by a deputy trainee, Michael Haigis. *Id.* at 76-78; Def't. Exh. E. Officer Lally showed them a photo of the defendant. Tr. at 29. In short order two additional deputy sheriffs pulled up. *Id.* at 78. After the deputies arrived, Officer Lally made a number of attempts to establish contact with the defendant by knocking and banging loudly on the front door of the residence, by placing calls to the defendant's cell phone and by yelling through the door, all in an effort to persuade the defendant to step outside. *Id.* at 28, 31-32, 78. At Deputy Thorpe's instruction, Deputy Haigis went around to the back of the house in case the defendant attempted to flee out the back door and also out of concern for officer safety. *Id.* at 29, 78, 84. Haigis reported to Lally that he observed through a rear window that the defendant was in the dining room, as were several firearms in plain view on shelves on the wall and on the table. *Id.* at 30-31, 33-34, 81, 85. After finally establishing contact with the defendant by telephone, Officer Lally told him that a S.W.A.T. team was on its way and that the only way to safely resolve the situation was for him to come out of the residence with his hands raised and wearing only boxer shorts. *Id.*. at 32. Eventually, the defendant did emerge from the residence and, in quick succession, was placed under arrest by Deputy Thorpe, handcuffed and put in a sheriff's department patrol vehicle. *Id.*. at 32-33, 78, 80.

After the defendant was put in a patrol vehicle, Officer Lally told Deputy Thorpe that he was going into the residence to check for evidence of additional conditional release violations. Tr. at 83, 88, 90; Def't. Exh. E. Lally entered the residence alone, armed with a holstered Glock 19 pistol. Tr. at 35, 62, 81, 85, 88. He then removed weapons from the residence and turned them over to Deputy Thorpe who took custody of them. *Id.* at 34-35, 88.

Officer Thorpe testified that he (Thorpe) had no authority to enter the residence without a search warrant and knew of no reason why he should enter the residence. *Id.* at 82. Later in his

-4-

testimony he acknowledged that in police work there are always security concerns, *id.* at 89, but expressed no particular concern about officer safety following the defendant's arrest. Tr. generally.

Officer Lally testified that, after learning from Deputy Haigis that there were weapons, as well as other persons,[4] in the house he entered the residence out of concern for his own and the deputies' safety in order to secure the weapons.[5] *Id.* at 33-35. He also testified that he believed that, in his capacity as a parole officer, he had a right to secure the weapons as evidence of a new conditional release violation by the defendant. *Id.* at 34. Officer Lally further testified that he did not mention the observance or seizure of the weapons in his report to the Parole Commission because he left the investigation of the firearms as a possible criminal violation to the Lee County Sheriff's Department. *Id.* at 37. An affidavit that Lally executed on August 24, 2006, following the events in question, does not contain any reference to the search of the house or to a concern for officer safety. Def't. Exh. C.

On August 25, 2006, Officer Lally contacted Sandra Rossier, a Parole Commission officer, to report that the defendant had been arrested on the outstanding violation warrant. Gov't. Exh. 4 at 5[6]; Tr. at 48, 50. During that conversation Lally acknowledged that the defendant was past his conditional release termination date and that his penalty exposure in his absconder violation case

---

[4] The other people in the house were the defendant's fiancée, an adult male and a child. Tr. at 35.
[5] Although Officer Lally testified that he told the deputies who were present that he remained concerned about officer safety, Tr. at 60, and that that was a second reason underlying his decision to enter the residence, *id.* at 33-34, I do not credit this testimony inasmuch as Deputy Thorpe did not corroborate it either in his own testimony, *see id.* at 83, which I find reliable, in the report he subsequently filed, Def't. Exh. E, or in a deposition he gave regarding this matter in February 2007, Tr. at 90, and the record is devoid of any suggestion that Lally took any precautions of the kind consistent with customary police practice before entering a residence to conduct a security sweep, such as first ordering other persons in the house to leave, requesting the deputies on the scene to accompany him inside or putting on a flak jacket.
[6] The last two entries appearing in Lally's case notes under date of August 24, 2006 were, in fact, made on August 25th and should bear that date. Tr. at 50.

was 78 days' prison time.[7] Gov't. Exh. 4 at 5; Tr. at 51-52. He also explained that the defendant likely faced new criminal charges in Lee County for firearms violations. Gov't. Exh. 4 at 5; Tr. at 51. Rossier pointed out, and Lally acknowledged, that because the defendant was past his conditional release termination date no new parole violation charges could be brought. Gov't. Exh. 4 at 5; Tr. at 51-52.

Carrado Lazzizzera, an investigator with the Federal Defender's Office, testified on behalf of the defendant. Tr. at 91. Prior to becoming an investigator, Lazzizzera had served as a state probation officer for six years. *Id.* at 92, 94. Lazzizzera testified that if the termination date of the defendant's conditional release was July 16, 2006, then any warrant for the his arrest stemming from an alleged conditional release violation had to issue prior to that date in order to be valid. *Id.* at 97. He further testified that on August 24, 2006, the date of the defendant's arrest and weapons seizure, the defendant's supervision had already terminated, that the defendant was then no longer on supervision, and that, as a consequence, Officer Lally did not have the authority to cite the defendant for any new violations of his conditional release. *Id.* at 98. Lazzizzera explained that the phrase "unless otherwise released or until other action may be taken," appearing as part of the second un-numbered paragraph of the Conditions of Supervision, means that the defendant's termination date of July 16, 2006 stood unless, prior thereto, the Parole Commission changed the termination date, and that the warrant that was issued for the defendant's arrest did not effect a change of the date of termination of the defendant's conditional release. *Id.* at 103-05. Finally, Lazzizzera testified that the arrest warrant itself remained in effect after the July 16, 2006 termination date because it had been issued prior to that date. *Id.* at 105.

---

[7] This corresponds to the amount of "gain time," or early release time, the defendant had earned that allowed him to secure an early prison release.

## II. Analysis

### A. Search of Residence

The threshold issue before the court is whether Officer Lally had the authority to enter the Fort Myers Shores residence and search for weapons therein after the defendant's arrest. The question of his authority turns on whether the defendant remained on conditional release when Officer Lally entered the premises. The evidence presented is uncontested that the defendant was arrested outside the residence. It is also uncontested that when Officer Lally entered the premises, neither he nor the deputies had a search warrant. There is no dispute that the outstanding arrest warrant was valid on the date of the defendant's arrest because it had been issued prior to July 16, 2006. The government contends that Officer Lally was authorized to conduct the challenged search both because the defendant was then still on conditional release, a form of parole, and, thus, a parolee who had no reasonable expectation of privacy, and because the Conditions of Supervision specifically permitted him to conduct a warrantless search of the defendant's residence and premises. The defendant responds that Lally was without jurisdiction to conduct the search in his role as a parole officer because when the search was conducted the defendant was no longer on conditional release, that status having expired on July 16, 2006 under the terms of the Conditions of Supervision.

A basic tenet of the Fourth Amendment is that a warrantless search of a home is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). That said, inasmuch as the "ultimate touchstone" of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions. *Id.* One established exception to the requirements of both a warrant and probable cause applies when a search is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In the

instant case, the terms and conditions of the defendant's conditional release provided that he was required to submit to searches by his conditional release supervisor. Gov't. Exh. 1 at 2, 4. By signing the Conditions of Supervision, the defendant consented to the search of his residence without a warrant during the term of his conditional release.

The government argues that the defendant remained on conditional release on August 24, 2006, the date of his arrest and of the challenged search and seizure, based upon the language in the Conditions of Release indicating that the stated termination date of July 16, 2006 was subject to extension if "other action [was] taken." *Id.* at 1. The government asserts that the issuance of the Violation Report and arrest warrant constituted "other action taken" and, therefore, effectively tolled the termination date of the defendant's conditional release. It concedes that it has not found any statutory or case law authority supporting its position.[8] *Id.* at 111-12. It also concedes that while Florida's probation statutes provide for tolling in probation-violation cases, there is no provision for tolling in Florida's parole statutes, including those governing the state's conditional-release program at issue here.[9] *Id.* at 109-10.

FLA. STAT. § 947.1405 establishes the framework for the state's conditional-release program. FLA. STAT. § 947.141 provides the details regarding violations of conditional release. Conditional release

---

[8] During post-hearing oral argument, the government did mention two Florida state-court opinions, *Ware v. Florida*, 474 So.2d 332 (Fla. 1st DCA 1985), and *Francois v. Florida*, 695 So.2d 695 (Fla. 1997). Both are inapposite inasmuch as they address tolling issues in a context (supervision of individuals serving probationary sentences) that differs significantly from that presented here.

[9] Notably, in response to the *Francois* decision the Florida legislature amended the relevant probation statute, FLA. STAT. § 948.06, to specifically provide for tolling of probationary periods in certain circumstances, but has never provided for tolling in the Conditional Release Program Act, FLA. STAT. §§ 947.1405 and 947.141, even though it has amended that statute as well in unrelated respects. Nor do the regulations adopted by the Parole Commission pursuant to FLA. STAT. §§ 947.1405(9) mention tolling.

> is an *extra* post-prison probation-type program. In other words, when an inmate is released due to gain time from a sentence that is eligible for Conditional Release, instead of going free as other offenders would do (unless they have probation or some other supervision to follow), these offenders are placed on supervision for the amount of time equal to the gain time they have accrued. If they violate their supervision, gain time is forfeited and the inmate is returned to prison to continue serving the sentence(s).

*Evans v. Singletary*, 737 So.2d 505, 507 (Fla. 1999) (emphasis in original). My own research has unearthed no case law, statutes or regulations which support the government's position that the stated July 16, 2006 termination date of the defendant's conditional release was stayed, tolled or extended by the issuance of the violation arrest warrant. Nothing in the hearing record establishes that the Parole Commission otherwise took any action that effectively extended the defendant's supervision termination date.[10] Indeed, Officer Lally acknowledged that the defendant's conditional release was past the termination date and that no new conditional release violation charges could be brought based on the weapons seized. On the record before the court, I find and conclude that the defendant's conditional release terminated on July 16, 2006 and that Officer Lally's jurisdiction to supervise the defendant as a conditional releasee therefore ended on that date, as did his authority to conduct warrantless searches of the defendant's residence pursuant to the Conditions of Supervision.[11] Accordingly, Officer Lally had no authority to enter the Fort Myers Shores residence following the defendant's arrest on August 24, 2006 or to conduct a warrantless search therein.

---

[10] Nor likely could it have. See FLA. STAT. § 947.1405(6), the last sentence of which provides: "The length of supervision must not exceed the maximum penalty imposed by the court."

[11] As previously noted, it is undisputed that the arrest warrant itself remained valid and outstanding after July 16, 2006 and until executed on August 24, 2006 since the Parole Commission issued it prior to July 16th.

## B. Good Faith Exception

The government argues that, even if the court reaches the above conclusion, the good-faith exception to the exclusionary rule applies and saves the day. The government contends that the defendant himself believed that he remained on conditional release on August 24, 2006 and that, therefore, the search was proper. The government also argues that Officer Lally had a good-faith belief that he was legally authorized to conduct a warrantless search of the residence on that date.

The exclusionary rule is not an individual right. It applies only when it serves to deter otherwise unlawful conduct and the benefit of the deterrence outweighs the cost. *United States v. Davis*, ___ F.3d ___, 2010 WL 810984 at *4 (11th Cir. Mar. 11, 2010). The decision to suppress evidence depends on the culpability of the officers and the "potential of exclusion to deter wrongful police conduct." *Id.* (citing *Herring v. United States*, ___ U.S. ___, 129 S.Ct. 695, 700 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)) (internal quotation marks omitted).

The Supreme Court in *Leon* held that in most cases evidence obtained when an officer acts in reasonable reliance on a search warrant issued by a detached and neutral magistrate may not be barred even if not supported by probable cause. 468 U.S. at 926. In each of its subsequent decisions "expanding the exception, the Court has concluded that the unlawful police conduct at issue was neither 'sufficiently deliberate that exclusion [could] meaningfully deter it' nor 'sufficiently culpable that such deterrence [would be] worth the price paid by the justice system.'" *Davis*, 2010 WL 810984 at *4) (quoting *Herring,* 129 S.Ct. 700 at 702). The good-faith exception to the exclusionary rule does not apply in instances:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly

> abandoned his detached and neutral judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is 'so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.

*United States v. Parker*, 600 F.Supp.2d 1251, 1259 (M.D. Fla. 2009) (internal quotation marks and citations omitted). If the issuing judge was neutral and detached, then suppression is appropriate only "'if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* (citing *Leon*, 468 U.S. 897 at 926).

In the instant case, there was no search warrant. Officer Lally's authority to conduct a warrantless search of the defendant's residence derived solely from the Conditions of Supervision. No impartial judicial officer relied on an affidavit, and the officer who conducted the search himself signed the Conditions of Supervision. Officer Lally was not misled, and the termination date was clear on the face of the Conditions of Supervision. To the extent that he somehow believed that the defendant remained on conditional release on August 24, 2006 and that he was authorized under the terms of the Conditions of Supervision to enter the residence and conduct the warrantless search following the defendant's arrest on the violation warrant, I find that such a belief was not grounded in good faith inasmuch as no legal authority whatsoever supports such a conclusion in the circumstances of this case A state parole officer supervising an individual on conditional release should be deterred from conducting a warrantless search of the individual's residence after the conditional release ends. Therefore, I find that the good-faith exception does

not apply here.[12]

## C. Officer Safety

The government next contends that Officer Lally had the authority to secure the premises to assure his own safety and that of the deputies present. A search incident to a lawful arrest can constitute an exception to the warrant requirement but is limited to and "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009). Officers have a recognized interest in assuring themselves that a residence in which a suspect has just been arrested is not harboring other people who are dangerous. *Maryland v. Buie*, 494 U.S. 325, 333 (1990). However, the scope of the search of a premises incident to arrest without a warrant is limited. *Id*. at 334; *see also, U.S. v. Bervaldi*, 226 F.3d 1256, 1268 (11th Cir. 2000). An officer must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337.

The fact that an arrest takes place outside of the residence does not itself preclude the officers from conducting a protective sweep. *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001); *see also, United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983). "A protective sweep of a suspect's house may be made even if the arrest is made near the door but outside the lodging if the arresting officers have reasonable grounds to believe that there are other persons present inside who might present a security risk." *Watson*, 273 F.3d at 603 (internal quotation marks and citation omitted).

---

[12] As for the government's cursory argument that the defendant himself believed that on the date of his arrest the terms and conditions of his conditional release were still in effect, a proposition not clearly established on this record, applicability of the good-faith exception rule does not turn on a belief that may have been held by the defendant.

In the instant case, Officer Lally testified that he entered the residence after the defendant had been arrested and placed in a sheriff's patrol car in order to secure the firearms that had been seen in plain view through a window both for reasons of officer safety due to the presence of other persons in the house and as evidence of a new conditional release violation by the defendant. I have already discredited Officer Lally's proffered officer-safety motivation testimony. *See* fn. 5, *supra*. While officer safety is often, if not always, a legitimate concern of law enforcement officers as they do their work, I am satisfied that in this case Officer Lally's post-arrest entry into the residence was motivated solely by his desire to secure the observed weapons as evidence of a new conditional release violation by the defendant.

This factual finding alone undermines the government's officer-safety argument as a justification for Officer Lally's warrantless entry into the residence and seizure of the firearms at issue. Beyond this, however, is the absence of any evidence in this record that any of the officers present harbored a reasonable belief that the persons remaining in the house posed a danger to them. Indeed, Deputy Thorpe testified that he knew of no reason to enter the house and understood that, in the circumstances in which he found himself, he had no authority to do so without a warrant.

Accordingly, the exception to the warrant requirement based on officer safety does not apply in this case.

### D. Totality of the Circumstances

Finally, the government argues that even if the defendant was no longer on conditional release at the time of the search and seizure, and even if the search and seizure were not justified by a good-faith exception or for reasons of officer safety, they were nevertheless lawful based upon the totality of the circumstances. The government also argues that the defendant had no

reasonable expectation of privacy as an absconder while on conditional release. "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation marks and citation omitted). I recognize that the Supreme Court has determined that an individual on parole has no reasonable expectation of privacy by virtue of his status. *Id.* at 848-49. But I have already determined that at the time of the search and seizure the defendant was no longer on conditional release and Parole Officer Lally had no continuing jurisdiction to act as he did following the defendant's arrest. He either knew, or should have known, that his supervisory jurisdiction vis-à-vis the defendant had ended on July 16, 2006. Applying *Samson*, I conclude that, in the circumstances of this case, the government had no legitimate interest in the warrantless search of the defendant's home following his arrest, let alone one that outweighed the intrusion represented by Officer Lally's search. Considering the totality of the circumstances, the search of the defendant's home was not reasonable.

### III. Conclusion

For the foregoing reasons, and on the showing made, I recommend that the proposed findings of fact herein be adopted, that the Motion be **GRANTED**, and that the evidence seized from the search of the defendant's residence on August 24, 2006 be suppressed.

## NOTICE

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Dated this 29th day of March, 2010.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

Copies: All Parties of Record